1
2
3
4
5
6
7               **UNITED STATES DISTRICT COURT**
8                  **DISTRICT OF NEVADA**
9

10   JAMES H. DONELL, PERMANENT
     RECEIVER,
11                                              Case No. 07-CV-0001-KJD-LRL
            Plaintiff,
12                                              **ORDER**
     v.
13
     FIDELITY NATIONAL TITLE AGENCY,
14   INC., A NEVADA CORPORATION,
     RITA FLOOD, AN INDIVIDUAL; REX
15   FARRIS, AKA REX L. FARRIS, et al.,

16          Defendants.

17

18          Presently before the Court is the Motion of Defendant, CONNIE S. FARRIS, to Recuse

19   (#39).  The Court has also received and considered the Opposition (#47) and the Reply (#50).

20   **I. Background**

21          This is the third attempt to recuse this Court in matters related to <u>Securities and Exchange</u>

22   <u>Commission v. Global Express</u>, Case No. CV-S-03-1514-KJD-LRL (the Receivership case).  The

23   first was raised in the Receivership case and considered August 13, 2004,  following receipt of an

24   anonymous letter purportedly sent to investors of Global Express.  The letter concerned past

25   representation of Vestin entities or investors by John E. Dawson, a relative of the Court.  Following

26   inquiry, the Court determined that John E. Dawson would not be appearing before the Court in the

1   Receivership case or any related matter (#113).  Further, it was not anticipated that any Vestin entity

2   would be a party to or interested in any receivership litigation. Id.  The Court also found to be

3   insufficient reason for recusal the fact that some of the same individuals had invested in both Global

4   and Vestin entities.  Accordingly, on August 13, 2004, more than eight months following

5   commencement of litigation, the Court determined recusal was not required or warranted (#113).

6        Subsequently, on October 27, 2005, Defendant CONNIE S. FARRIS filed in the Receivership

7   case her sealed motion for recusal (#342).  In that motion, Defendant FARRIS suggested that the

8   Court's rulings in the instant case could somehow affect Vestin, a company allegedly competing with

9   Global Express entities.  She further suggested that the involvement of John E. Dawson and Shannon

10  Haddow in Vestin entities required recusal.  In response, the Court filed its Declaration showing that

11  John E. Dawson, in November of 2003, resigned from the Board of Directors of Vestin Group, Inc.

12  (#364).  The Receivership case was not filed until December 4, 2003.  The Court also pointed out

13  that none of the Vestin entities had been or was a party to this action. The Court also affirmed that

14  the law firm in which John E. Dawson became a partner, is not involved in representation of any

15  Vestin entities or representation of anyone before this Court.  Although John E. Dawson served as

16  President of an entity known as Vestin Advisors, Inc., he gave no investment advice and served only

17  as custodian of funds for individuals who wanted to self-direct the investment of funds held in their

18  individual retirement accounts.  John E. Dawson was not at that time a shareholder in Vestin

19  Advisors, Inc.  The Court also noted that John E. Dawson is no longer married to Shannon Haddow.

20  The Court also declared that none of the Vestin entities, John E. Dawson, or any person related to the

21  Court within the third degree of relationship, or the spouse of such person, is or has been a defendant

22  in the instant action, nor do any such individuals have an interest that could be substantially affected

23  by the outcome of the Global Express litigation (#364).[1]  Accordingly, the Court, on January 10,

24  2006, ruled that Defendant's motion to recuse was, after 23 months of active litigation, untimely,

25  _____

26  [1] Defendant claims she does not have access to the documentation, yet also states that her
    attorneys are appealing the denial of recusal.

2

1  factually inaccurate, irrelevant and without basis in fact or law to support recusal or disqualification

2  (#396).

3        In the instant motion to recuse, filed July 21, 2007 (#39), Defendant FARRIS essentially

4  repeats the facts and argument of her previously denied motion to recuse.

5        She asserts, unequivocally, that the following individuals or companies have an involvement,

6  interest or benefit from the outcome of the present case and the Receivership case: Michael V.

7  Shustek, John Baldwin, Shustek Investments, Vestin Mortgage, Vestin Funds I, II and III, Capsource,

8  Inc., Lance Bradford, Stephen Byrne, Michael Newell, John Baldwin Trust, Hard Money Funding,

9  Bridge Capital and Susan Bopp.  In support of this claim, Defendant Farris points to a state court

10 lawsuit filed by Global Express Capital Corporation against Vestin Mortgage in June of 2001 on the

11 Willowdale project.  She states that  both Vestin Mortgage and Global Express Capital Corp. were

12 lenders for that project at an earlier time.  However, she fails to mention that case was closed April

13 19, 2002, more that 18 months before the Receivership case was filed.  Moreover, the Court has no

14 relationship, past or present, with any of these individuals or companies.

15       Defendant also mentions complaints filed with various regulatory agencies by Global Express

16 Capital Corporation against Michael Shustek and the Vestin entities.  She alleges that the Vestin

17 entities have benefitted from the closure of the Global Express entities, citing a securities form

18 10KSB dated April 2, 2001, filed by Vestin Group, Inc., which mentions Global Express Mortgage

19 as a competitor of Vestin.  Defendant also mentions that a second deed of trust was purchased by

20 Michael Shustek from a Global Express investor and that Michael Shustek is the grantee of a power

21 of attorney for "a previous ownership position in a property" which was titled with Black Tie

22 Investment Corp., a receivership entity.

23       Attached to Defendant's Motion as Exhibit G are copies of public records which Defendant

24 erroneously contends show an association between the Court and companies or individuals "all of

25 who have a vested interest in the successful operations of the Vestin entities." (Def.'s Mot. to

26 Recuse, Ex. G.)

3

## II. Analysis

The relevant provisions for disqualification of judges are set out in 28 U.S.C. §455 and Canon 3 of the Code of Conduct for United States Judges.  Canon 3C  provides in relevant part as follows:

        C.  Disqualification

      (1)    A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:

              (c)    The judge knows that, individually or as a fiduciary, the judge or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding;

              (d)    The judge or judge's spouse or a person related to either within the third degree of relationship, or the spouse of such person:

                  (i)    is a party to the proceeding or an officer, director or trustee of a party;

                  (ii)     is acting as a lawyer in the proceeding;

                  (iii)    is known by the judge to have an interest that could be substantially effected by the outcome of the proceeding.

In the absence of a legitimate reason to recuse himself, a judge has a duty to sit in judgment in all cases coming before him.  Laird v. Tatum, 409 U.S. 824, 837 (1972).  "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."  Hinman v. Rogers, 831 F.2d 937, 939(10th Cir. 1987) (citing Brody v. President and Fellows of Harvard College, 664 F.2d 10,12 (1st Cir. 1981).  Peripheral associations are not a basis for recusal.  Salt Lake Tribune Pub. Co., LLC v. AT&T Corp., 353 F. Supp.2d 1160, 1181 (D.Utah 2005).  The burden is on the movant to establish that a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be

4

1    questioned.  <u>Clemens v. U.S. Dist. Ct.</u>, 428 F3d. 1175, 1178 (9th Cir. 2005).  The "reasonable

2    person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed,

3    thoughtful observer." <u>In re Mason</u>, 916 F.2d 384, 386 (7th Cir. 1993).

4           Defendant has not established the existence of any of the specific grounds that would require

5    recusal in all instances.  She instead argues generally that the Court's impartiality might reasonably

6    be questioned based on alleged relationships with individuals and entities which are not party to this

7    litigation.  Specifically, she claims that Vestin entities are competitors of Global Express, that

8    relatives of the Court have past relationships with Vestin entities and associates, necessitating

9    recusal.

10          Extending Defendant's reasoning to its logical conclusion, if any judge or any of his relatives

11   has any association, past or present, with individuals holding an interest in a bank or other business,

12   that judge would not be able to preside in any case involving a competitor of that bank or business.

13   Such an absurd result is not called for by any case law, statute or canon.

14           The Court will first respond to Defendant's allegation that Michael V. Shustek, John

15   Baldwin, Shustek Investments, Vestin Mortgage, Vestin Funds I, II and III, Capsource, Inc., Lance

16   Bradford, Steven Byrne, Michael Newell, John Baldwin Trust, Hard Money Funding, Bridge Capital

17   and Susan Bopp, alleged associates of Vestin entities, all have an involvement, interest, or benefit

18   from the outcome of the present case and the Receivership case.  The allegation is clearly false.

19   None of those individuals or companies are parties to the instant litigation or the Receivership case.

20   Moreover, Defendant has not shown that any of them has a legally cognizable interest in the outcome

21   of this litigation.

22          Although Defendant correctly states that, in a disclosure dated April 2, 2001, Global Express

23   is identified as a competitor of Vestin, numerous others, including many banks, are also mentioned

24   as competitors.  However, whatever competitive relationship existed between Vestin and Global

25   Express entities as of April 2001, is not indicative of that which existed on December 4, 2003, the

26   date the receivership case was filed, or on January 10, 2006, when Defendant's first motion to recuse

was denied.  In December of 2003, the Securities and Exchange Commission determined Global Express investments to be part of an illegal Ponzi scheme where new investor money was being used to make interest payments to earlier investors while concealing that fact from the investors.  Upon establishment of the receivership, Global Express ceased to solicit investors or to be a competitor in the lending industry.  On that day, December 4, 2003, John E. Dawson was no longer a member of the Board of Directors of Vestin Group, Inc.   He later resigned from the firm that had, in the past, acted as counsel for the Vestin entities and became a partner in a law firm that was not involved in the representation of Vestin entities.  Although he served as President of Vestin Advisors, Inc., the entity had absolutely no relationship to the Global Express entities or the instant litigation (#364).

In support of her contention that Lance Bradford and Steven Byrne have a connection to this case, Plaintiff states that she was unable to take the depositions of those individuals.  She erroneously suggests that this is somehow the fault of the Court for not ruling on an objection.  The record demonstrates otherwise.  Messrs. Bradford and Bryne sought a protective order from the Honorable Larry R. Leavitt, the magistrate judge assigned to this case.  In the Federal District of Nevada, it is magistrate judges who have authority to finally hear and determine all pre-trial discovery matters. Magistrate Judge Leavitt initially granted a protective order, then later withdrew it and ordered that the depositions proceed.  Although Messrs. Bradford and Bryne filed an improperly denominated "objection" to the order, that filing did not stop the depositions from going forward.  Counsel to Defendant FARRIS have considerable experience in the federal courts and would have been fully aware that the filing of an objection does not result in a stay of discovery.  However, they did nothing to force the depositions.  While correspondence between counsel reflects a feeble attempt to reschedule, the depositions never went forward.  Lacking cooperation from deponents or deponent's counsel, it was the responsibility of counsel for Defendant to seek an order compelling discovery from the magistrate judge.  While Defendant FARRIS states in her Reply that an order compelling discovery was sought, the docket in the Receivership case does not reflect any such application.  In any event, a judge's refusal to permit the taking of depositions is insufficient to require

1   disqualification.  <u>Botts v. U.S.</u>, 413 F.2d 41 (9th Cir. 1969).

2        Defendant also states that she could not respond to Plaintiff's Motion for Summary Judgment

3   in the Receivership case because she did not have the information needed from the depositions.

4   However, if Defendant FARRIS required such information to respond to Plaintiff's Motion for

5   Summary Judgment, it was the responsibility of her counsel to file a Federal Rule of Civil Procedure

6   56(f) affidavit seeking a continuance to permit the depositions to be taken or additional discovery to

7   be had.  The docket reflects that Defendant failed to file such an affidavit or otherwise seek relief.

8   The Court can only surmise that Defendant and her counsel did not consider as critical to her

9   defense, the information to be derived from the depositions of Bradford and Bryne.  To summarize,

10   all pretrial discovery matters are heard and finally determined by the magistrate judges of this

11   district.  An appeal to the district judge, not an objection, is the proper procedure to challenge a

12   magistrate judge's order.  In either event, an appeal or objection does not work a stay of discovery.

13   Accordingly, there was nothing preventing Defendants from going forward with the depositions of

14   Bradford and Bryne, or, if the deponents refused to attend, seeking an order from the magistrate

15   judge compelling their attendance.

16        Defendant's Exhibit "G" allegedly shows the inter-relations between the Court, its family,

17   and companies associated with the Court, "all of who have a vested interest in the successful

18   operations of the Vestin entities".  Exhibit "G" includes documents from public records dated 2001-

19   2003, concerning investments by Dawson family members, not including the Court, spouse or minor

20   children, in deeds of trust in which Vestin Investments was also a party.  Those documents represent

21   the purchase of fractionalized interests in loans secured by deeds of trust encumbering designated

22   property.  However, these do not demonstrate investments in any of the Vestin entities even if Vestin

23   may have taken a fee for its involvement.  Moreover, those investments have been fully paid long

24   ago and the encumbrances released.

25       It should be remembered that Cannon 3 applies only to investments held by the Judge or the

26   Judge's spouse or minor child residing in the Judge's household.  Until it was pointed out in

1    Defendants' exhibits, the Court was not aware of any such investments on the part of other members

2    of extended family, nor did the Court have a duty to learn of such investments.  As also previously

3    stated, none of the Vestin entities are party to this litigation or the Receivership case.  None of the

4    Vestin entities have any legally cognizable interest in the outcome of either this case or the

5    Receivership case.  There is no investment by the Court, spouse, or any minor child residing in the

6    Judge's household in any Vestin entity.  While other relatives of the Court may have, in the past,

7    purchased fractionalized interests in deeds of trusts in association with Vestin entities, income from

8    those investments would have been derived solely from notes on secured property and not dependent

9    upon the success of any Vestin entity.

10           In her recital of entities that "have a vested interest in the successful operation of the Vestin

11   entities", Defendant names Multistate Properties, Inc., 629 South Casino Center Boulevard, LLC,

12   and 616 South Third Street, LLC.  These allegations are reckless and false.  None of the named

13   entities has any relationship whatsoever to any Vestin entity nor are any of them dependent on the

14   successful operation of Vestin entities or investments.

15           Defendant also identifies individuals who are investors in Global Express and also investors

16   in Vestin entities.  As previously stated, the fact that some investors invested in both entities is not

17   legally significant for purposes of the motion to recuse.

18           In Pashaian v. Eccelston Properties, Ltd., 88 F.3d 77 (2d Cir. 1996) the court held that

19   automatic recusal of the judge was not required where the law partner of defendant's attorney was

20   married to the sister of the judge's wife.  In Diversifoods, Inc. v.  Diversifoods, Inc., 595 F. Supp.

21   133 (N.D. Ill. 1984) the court held that the district judge was not required to recuse herself based on

22   the fact that her husband was a member of a law firm which represented defendant in matters other

23   than the pending litigation where neither husband nor his firm was acting as a lawyer in pending

24   litigation.  "A judge should not recuse on unsupported, irrational or highly tenuous speculation."

25   Hinman, 831 F.2d at 939.

26

1    Defendant FARRIS raises two new issues in her Reply, effectively denying Plaintiff the

2  opportunity to respond.  First, she argues that the Court's self-recusal in the U.S. District court case

3  of Desert Land, LLC, et al v. Owens Financial Group, Inc., Vestin Mortgage, et al, CV-S-00-1406-

4  KJD, mandates recusal in this case as well.  It is important to remember that the recusal in Desert

5  Land v. Vestin, et. al, occurred November 27, 2000.  As stated in the Court's response to

6  Defendant's first motion to recuse, the Desert Land recusal was issued for many reasons, including

7  existing or former relationships or associations with both Plaintiffs and Defendants, parties or

8  individuals having an interest or potential interest in the outcome of the litigation, and/or law firms

9  representing those entities or interests.  Vestin Mortgage was a party defendant in that case.  John E.

10  Dawson was, in November of 2000, a partner in a law firm that acted as counsel for Vestin entities.

11  The Receivership case was not filed until December 2003.  Long before Defendant filed her motion

12  to recuse in the Receivership case, John E. Dawson left his former firm to become a partner in

13  another law firm that did not represent Vestin entities.  Even in his singular position as President of

14  Vestin Advisors, an entity which is not before this Court, John E. Dawson served only as a custodian

15  of funds.  Moreover, no Vestin entity is or has been a party in the current litigation.

16    Also, for the first time in her Reply (#50), Defendant FARRIS claims there was a *ex-parte*

17  meeting between the Court and SEC Attorney Sanchez on December 17, 2003, following the hearing

18  on the Motion for Preliminary Injunction.  There was no such *ex-parte* meeting with the SEC,

19  Attorney Sanchez or anyone else involved in this case at any time.  Defendant's counsel may have

20  left the hearing before it concluded, however, there was no *ex-parte* discussion as claimed.

21  **III. Conclusion**

22    Until it was pointed out by Defendant that members of the Court's extended family had

23  invested in deeds of trust in association with Vestin entities or had a position other than as counsel

24  for a Vestin entity, the Court was completely unaware of such matters.  In any event, Global Express

25  ceased to be a competitor to banks and other lenders no later than the day the receivership was

26  ordered and possibly as early as when Global commenced its illegal activities through Defendant

9

1   FARRIS.  As stated, the Court, spouse and minor children have never had any interest in any Vestin

2   entity.  At most, other members or the Judge's family were simply investors in deeds of trust which

3   where not dependent upon the success or failure of Vestin entities.  Those investments were

4   liquidated long before the commencement of this litigation. Vestin is not now a party to any

5   proceeding before this Court nor is any person within the third degree of relationship acting as a

6   lawyer in any such proceeding or known to have an interest that could be affected by the outcome of

7   this proceeding.

8          Defendant has failed to demonstrate that the Court's impartiality might reasonably be

9   questioned in this proceeding or any other.  Receiverships require more judicial resources than most

10  other cases.  However, the Court has a duty to hear and decide all matters assigned unless

11  disqualified.  Defendant has failed to identify any grounds upon which the Court could, in good

12  conscience, rely in issuing a recusal.  The question of recusal has been decided on essentially

13  identical allegations on two previous occasions during the course of the Receivership case.

14         Any interest of Vestin in the instant litigation is even more peripheral than might be argued to

15  exist in the Receivership case.  Defendant has not met her burden of setting forth facts showing that a

16  reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.

17  The grounds for recusal are highly tenuous, speculative and remote.  Defendant has not cited any

18  cases supporting recusal under similar circumstances.  In fact there are no cases supporting

19  Defendant's position.  Applying the tenuous standard proposed by Defendant would stretch recusal

20  provisions far beyond their intended purpose and potentially force disqualification in most cases.

21         Accordingly, the Motion of Defendant FARRIS to Recuse (#39) is **DENIED**.

22         DATED this 10th day of September, 2007.

23

24                                          _____

25                                          Kent J. Dawson
                                            United States District Judge
26

10