UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES H. DONELL, PERMANENT RECEIVER<br><br>         Plaintiff,<br><br>v.<br><br>FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC., *et al.*,<br><br>         Defendants. | Case No. 2:07-CV-00001-KJD-PAL<br><br>**ORDER** |

Before the Court is Defendant Rita Flood's Motion for Summary Judgment (#186). Plaintiff James Donell, Permanent Receiver, has responded (#209) and Flood has replied (#222). Defendant Fidelity National Title Agency of Nevada, Inc.,("Fidelity") has joined in the reply (#223).

Also before the Court is Fidelity's Motion for Summary Judgment (#187). Plaintiff has responded (#208) and Fidelity has replied (#219). Flood has joined in the reply (#224).

I. Background

In 1999, Connie Farris ("Farris") started a corporation called Conrex International Financial, Inc., which conducted business under the name Global Express Capital Mortgage ("GECM"). Farris

was the president and sole board member of GECM. On or about November 21, 2000, Farris organized Global Express Capital Real Estate Investment Fund I, LLC (the "Fund"). GECM was appointed as the Manager of the Fund. As the president and sole board member Farris controlled both GECM and the Fund.

The Fund solicited money from investors and then used that money to make loans or purchase interests in loans secured by mortgages or deeds of trust. Under the Fund's Amended and Restated Operating Agreement, GECM, as Manager, had "full, exclusive and absolute right, power, and authority to manage and control the [Fund] and the property, assets, affairs and business thereof." GECM also had the authority (1) to engage in transactions and dealings on behalf of the Fund, including transactions with any Member or Affiliate of the Fund; (2) to appoint agents on behalf of the Fund; and (3) to open, deposit, maintain and withdraw funds from the Fund's financial accounts.

On October 17, 1999, Farris and her husband, Rex Farris, executed a trust agreement forming the BDCC Trust, appointing Farris as a trustee. On July 11, 2001, BDCC Trust entered into an agreement to purchase a parcel of undeveloped real property located at 464 St. Moritz Drive, Henderson, NV (the "Property") for $750,000. On September 25, 2001, BDCC Trust executed a promissory note and deed of trust ("First DOT") in the amount of $850,000 in favor of a group of individual investors from whom GECM had solicited funds. The First DOT encumbered the Property and was recorded on November 15, 2001.

On November 25, 2002, an agent of the Fund contacted Defendant Flood, an escrow officer at Defendant Fidelity, by email. The Fund's agent discussed several transactions and then asked Flood to open an escrow to facilitate a $150,000 loan transaction from the Fund to BDCC Trust. Since Farris was a trustee of BDCC Trust and also the person who controlled the Fund she was on both the lender and the borrower sides of the transaction.

The parties initially contemplated that the Fund's loan to BDCC Trust would be secured by a second deed of trust (the "Fund's DOT") against the Property. The Escrow Order stated:

> Upon further authorization you will record all
> instruments without collection when you can issue said form of
> [Title] Policy showing Title vested in:
> BDCC Trust Free from encumbrances except:
>  1. All taxes paid in full
>  2. Special Assessments that are not delinquent
>  3. Rights of way, conditions, and restrictions of record
>  4. Second Deed of Trust to record

Under the Escrow Order, Fidelity was to record the Fund's DOT once it was able to issue a title insurance policy free from encumbrances and when it received further authorization from the Fund.

The same day the escrow was opened, Defendants received Loan Escrow Instructions from the parties authorizing Fidelity to release from escrow the following amounts: (1) $5,250 to the Fund, (2) $59,934 to Valley Construction Control Service, and (3) the net proceeds to BDCC Trust. Fidelity was also instructed to withhold $6,250 in the escrow for GECM and $200 for a collection set-up fee. These instructions to release funds were issued to Fidelity even though Fidelity had not yet conducted a preliminary title search and was not in a position to issue a title policy or record the Fund's DOT.

Pursuant to the instructions, Fidelity issued a $59,934 check to Valley Construction Control and a $6,250 check to GECM.[1] On November 27, 2002, GECM sent Flood an email instructing her to issue a second check to Valley Construction Control Service from the escrow for $46,004.25, which Fidelity followed. On December 6, 2002, Fidelity issued the net proceeds to BDCC Trust in the form of a check in the amount of $36,000.

On January 3, 2003, the Fund deposited another $150,000 check into the escrow account for an increased loan amount of $300,000. The Fund provided escrow instructions authorizing Fidelity to immediately release (1) $5,250 to the Fund, (2) $1,341.66 to the Fund, and (3) $137,408.33 to GECM. Fidelity was also instructed to withhold $6,000 in the escrow account for the benefit of GECM. Fidelity complied with these instructions.

---

[1] The instructions called for these funds to be withheld for the benefit of GECM, but there is was no objection to the distribution of these funds by check.

3

On January 13, 2003, the Fund deposited an additional $250,000, increasing the total loan amount to $550,000, and provided written instructions to Fidelity to immediately disburse the following amounts: (1) $10,000 to be withheld on behalf of GECM; (2) $8,750 to the Fund; (3) $1,652.78 to the Fund; (4) $228,097.22 to Farris. Fidelity immediately complied with these instructions except that it again issued a check to GECM.

On January 14, 2003, BDCC Trust signed a promissory note and Short Form Second Deed Of Trust and Assignment of Rents in favor of an individual named Lee Novak ("Novak Deed of Trust") The promissory note and Novak Deed of Trust were recorded on February 28, 2003 against the Property. The Novak Deed of Trust expressly states that it is "second and junior to the Deed of Trust now of record." The only deed of trust of record at the time of the recording of the Novak Deed of Trust was the First DOT.

On February 26, 2003, the Fund deposited an additional $200,000 into escrow, increasing the total amount of the loan from the Fund to BDCC Trust to $750,000, and provided written instructions to Fidelity to immediately disburse the following amounts: (1) $6,999.99 to the Fund and (2) $191,000 to Global Express 2. On the same day, Fidelity complied with the written instructions by issuing a check for $6,999.99 to the Fund and $191,000 to Global Express 2.

Finally, on March 13, 2003, the Fund made a $200,000 deposit into escrow increasing the total amount of the loan to BDCC Trust to $950,000, and provided written instructions to Fidelity authorizing it to make the following disbursements: (1) $6,999.99 to the Fund; (2) $1,011.10 to the Fund; and (3) $191,988.91 to Global Express 2. Fidelity complied with these instructions. In connection with the written instructions, Fidelity also received a modified promissory note and deed of trust signed by the Fund and BDCC Trust acknowledging that the loan was increasing to $950,000.

Neither the Fund nor BDCC Trust directed Fidelity to close the escrow, provided any further instructions to Fidelity and or objected to any of the distributions made by Fidelity. Since it was not provided with further deposits, instructions to disburse, authorization to record the second deed of

trust, or instructions to close the escrow, Fidelity ceased work on the file and disbursed the sums of $3,311.76 and $2,000.01 to itself for its costs in October 2003. A cancel order was subsequently issued for the file on August 16, 2004.

On December 18, 2003, Plaintiff was appointed receiver over the Fund,[2] GECM and the other affiliated Global Express entities and on July 12, 2004, the Court entered an order expanding the receivership estate to include BDCC Trust and other entities related to Connie and Rex Farris. As receiver, Plaintiff took custody, control, possession and charge of all funds, assets, collateral, premises, books, records, papers and other real or personal property, including the Property owned by BDCC Trust.

In July 2004, Plaintiff listed the Property on behalf of the receivership estate for $1,500,000. Shortly thereafter, the Property was appraised for $750,000. In February 2005, Plaintiff received an offer to purchase the Property for $800,000. Plaintiff made a counteroffer of $1,450,000. At this time the amount owed under the First DOT was $1,169,264. Plaintiff rejected an offer of $920,000 in March 2005.

The beneficiaries of the First DOT sought permission from Plaintiff to foreclose on the Property due to BDCC Trust's nonpayment of the $850,000 loan. The beneficiaries had previously been enjoined from foreclosing on the Property by a preliminary injunction in the underlying securities action. Plaintiff informed the First DOT beneficiaries that he was going to seek a court order "authorizing the receivership estate to abandon the property for lack of equity" and later noted that "since it did not appear that there was any equity in the property (the offers were coming in at around $1 million), I decided to file a motion with the Court to release the property from the receivership estate." However, while Plaintiff was in the process of preparing a motion to release the Property from the receivership estate, an issue arose regarding whether the First DOT had actually

---

[2] SEC v. Global Express Capital Real Estate Investment Fund I, LLC, Case No: 2:03-cv-01514-KJD-LRL. See also U.S. v. Connie S. Farris, 2:07-CR-051-RLH-PAL.

5

been paid off. If the First DOT was not a valid encumbrance against the Property, the receivership estate would have substantial equity in the Property.

On May 24, 2005, Plaintiff wrote Flood a letter asking her to review Fidelity's files regarding the escrow between the Fund and BDCC Trust and acknowledging that funds had been disbursed through the escrow but no documents were ever recorded. On or about July 12, 2005, a Notice of Rescission of Release of Obligation Under Deed of Trust was recorded with the Clark County Recorder clarifying that the First DOT had not been satisfied and therefore the First DOT remained a valid encumbrance against the Property.

On September 28, 2005, the Court approved a Stipulation and Order between Plaintiff and the beneficiaries of the First DOT affirmatively authorizing them to foreclose on the Property. On November 28, 2005, Nevada Trust Deed Services recorded a Notice of Default and Election to Sell the Property for the benefit of the First DOT beneficiaries and on March 22, 2006 the Property was sold to Foothills Partners for $1,307,550. On January 31, 2007, Foothills Partners sold the Property to Gale and Judy Wickersham for $2,500,000.

On January 3, 2007 Plaintiff filed suit against Fidelty and Flood and seeks recovery for (1) breach of fiduciary duty; (2) professional negligence; (3) negligence; (4) negligent misrepresentation; and (5) intentional misrepresentation and (6) breach of contract by Fidelity.

II. Discussion

A. Legal Standard For Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See, Fed. R. Civ. P. 56(a); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a).

"[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "In ruling on a summary judgment motion, a trial court can consider only admissible evidence." Beyene v. Coleman Security Services, Inc., 854 F.2d 1179, 1180 (9th Cir. 1988); Dzung Chu v. Oracle Corporation, 627 F.3d 376, 385 (9th Cir. 2010). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B. Breach of Fiduciary Duty

In Nevada, a claim for breach of fiduciary duty requires a plaintiff to show: (1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach proximately caused the damages. Brown v. Kinross Gold U.S.A., Inc., 531 F.Supp.2d 1234, 1245 (D.Nev.2008). "In managing monies deposited in escrow, the escrow agent is required to conduct his affairs with scrupulous honesty, skill and diligence. The escrow agent must strictly comply with the terms of the escrow agreement and may not use the proceeds in any manner that is not authorized by contract or deposit." Broussard v. Hill, 682 P.2d 1376, 1378 (Nev. 1984). In an escrow transaction, the escrow instructions control the parties' rights and define the escrow agent's duties. Mark Props., Inc. v. Nat'l Title Co., 117 Nev. 941, 946, 34 P.3d 587, 590 (2001). Nevada has recognized a single exception to this rule: an escrow agent has a limited duty to disclose fraud to parties to the escrow transaction. Id. This duty only attaches if an escrow agent is "aware of facts and circumstances that a reasonable escrow agent would perceive as evidence of fraud." Id. The exception does not impose a duty to investigate. The exception only extends to parties to the escrow transaction and not to third parties. Id. Further inquiry by Defendants would likely have led to the discovery of the Ponzi scheme operated by Farris, however Defendants had no legal duty to pursue an investigation.

Plaintiff claims that Flood, as a Fidelity employee, breached her fiduciary duties by releasing money delivered to Fidelity from the Fund in the absence of jointly executed escrow instructions

directing her to do so, releasing some of the funds to non-parties to the escrow, failing to record any of the original deeds of trust delivered to Fidelity from the Fund, and not returning any of the original promissory notes or deeds of trust relating to the loans to the Fund.[3] Defendants argue that their actions were not a breach of fiduciary duty because the closing conditions had not been met so the deposited money disbursed by Defendants still belonged to the Fund.

"[W]hen money [is]... delivered to the escrow agent to be delivered to the other party upon the performance of certain conditions, the title to the deposit remains in the depositor until the conditions of the escrow are performed." Miller & Starr, California Real Estate *3d*, § 6.7 (2010). Plaintiff has offered no evidence that the conditions for the close of escrow were met. Plaintiff has unequivocally stated that "[t]he Receiver does not dispute the fact that Fidelity followed the written instructions in disbursing checks to the designated entities in the designated amounts. Nor does the Receiver dispute that the Fund and BDCC Trust never objected to, or questioned any of these disbursements." (#208 at 4.) Defendants argue that they did not see anything wrong with the instructions and that it is not uncommon for related entitles to engage in transactions. Plaintiff has offered nothing to show that Fidelity and Flood were "aware of facts and circumstances that a reasonable escrow agent would perceive as evidence of fraud." Mark Props, 34 P.3d at 590. Defendants' duty was to follow the escrow instructions and they performed their duty by disbursing the Fund's deposits according to instructions given by the Fund.

Defendants argue that they did not breach a fiduciary duty by failing to record the Fund's DOT on the Property because Fidelity and Flood were awaiting the "further authorization" and completion of other closing conditions necessary to record the instruments. Plaintiff has provided no evidence showing that the closing conditions were met, including "further authorization" or the ability of Fidelity to issue a title insurance policy to BDCC Trust free from encumbrances. Plaintiff admits that he has no knowledge of anyone requesting that Fidelity record the Fund's DOT. Plaintiff

---

[3] Plaintiff also argues for liability based on the Uniform Fiduciaries Act NRS 162.050 and civil aiding and abetting. These claims were not asserted in the Complaint and cannot be raised for the first time in Plaintiff's Opposition.

admits that the authorized representative of the Fund who dealt with Fidelity testified under oath from personal knowledge that Fidelity's agent faithfully followed the escrow instructions given her. Farris, the manager of the Fund, knew that the Fund's DOT was not recorded because she authorized the Novak Deed of Trust to be recorded in second position – the position that the conditional instructions contemplated the Fund's DOT would be recorded. The parties to the escrow did not take the necessary steps to close the escrow. Flood and Fidelity have provided evidence showing that they followed the instructions they received. Plaintiff has provided no evidence that they breached their fiduciary duties.

Finally, there is no indication that Defendants were asked or obligated to return the deeds and promissory notes to the Fund. Accordingly, summary judgment on the claim for breach of fiduciary duty is granted in favor of Defendants Flood and Fidelity.

### 2. Damages Proximately Caused by the Breach

Even if Plaintiff could show a breach, he cannot show damages proximately caused by the breach. Plaintiff claims damages of $1,330,736. Plaintiff arrives at this figure by subtracting the total amount due and owing on the First DOT as of February 2005 ($1,139,264) from $2,500,000, which was the price the Wickershams paid for the Property on January 31, 2007. Plaintiff argues that Fidelity's failure to record the second deed of trust in favor of the Fund caused damages to the investors of the Fund because there was no source of recovery for the Fund.[4]

In 2005, the Property was encumbered with more than $1.1 million dollars from the First DOT. Plaintiff's appraiser valued the Property at $750,000. The highest offered received by Plaintiff was $920,000. In light of this situation, Plaintiff – a licensed real estate agent – decided to "abandon

---

[4] Plaintiff suggests that Fidelity had knowledge that the Fund consisted of individual investors. However, Plaintiff acknowledges that the investors were aware that they did not control the Fund. The Fund, not the individual investors, was party to the escrow transaction. To the extent that Plaintiff argues that the investors in the Fund were damaged because the disbursements were part of a Ponzi scheme, his argument fails. There is no evidence that Defendants were actually aware of the Ponzi scheme. Farris perpetrated the Ponzi scheme as manager of the Fund. Plaintiff, as receiver, stands in the place of the Fund and so is barred from recovering from others for its own wrongdoing. See USACM Liquidating Trust v. Deloitte & Touche, 764 F. Supp. 2d 1210, 1229-30 (D. Nev. 2011) (bankruptcy trustee barred from recovery against accounting firm for fraud by principals of commercial mortgage company)

1  the property for lack of equity." Plaintiff executed a stipulation seeking an exception from Court's
2  preliminary injunction that allowed the holders on the First DOT to foreclose. The Property was sold
3  twice by unrelated parties and appreciated in value. Plaintiff now claims "if there had been a
4  recorded second deed of trust in favor of the Fund instead of the subsequent junior liens, the
5  Receiver would have been more cautious and held out for a longer period of time in order to try to
6  protect the Fund's investment."[5] But Plaintiff was also receiver for the owner of the Property, BDCC
7  Trust. Plaintiff does not explain why he could not have left the Court's stay in place, "held out for a
8  longer period of time," and then sold the Property as receiver of BDCC Trust and used the excess as
9  a source of recovery for the receivership.

10  Despite Plaintiff's unsupported assertion to the contrary, the evidence shows that he allowed
11  the beneficiaries of the First DOT to foreclose because he believed that there was no equity in the
12  Property. Plaintiff cannot now look at the price of the Property after two sales and nearly a year in a
13  booming real estate market and claim that he would not have abandoned it if Defendants had
14  recorded the Fund's DOT. The evidence shows that Plaintiff's decision to abandon the Property, not
15  Defendants' conduct, led to the receivership's inability to recover from the Property. Accordingly,
16  there are no damages.

17         C. Professional Negligence and Negligence

18  Under Nevada law, to establish a claim for professional negligence, a plaintiff must show: (1)
19  the defendant had a duty to use the skill, prudence, and diligence as other members of the profession
20  commonly possess and exercise; (2) the defendant breached that duty; (3) the breach proximately
21  caused the resulting injury; and (4) actual loss or damage resulting from the professional's
22  negligence. Morgano v. Smith, 879 P.2d 735, 738 (Nev.1994). Similarity, a showing of negligence
23  requires Plaintiff to show duty, breach, causation, and damages. Bower v. Harrah's Laughlin, Inc.,
24  215 P.3d 709, 724 (Nev. 2009). "Proximate cause, or legal cause, consists of two components: cause

---

26  [5] Plaintiff's self-serving affidavit is insufficient evidence to preclude the entry of summary judgment. Villiarimo, 281 F.3d at 1061.

10

in fact and foreseeability." Doud v. Las Vegas Hilton Corp., 109 Nev. 1096, 864 P.2d 796, 801 (Nev.1993) (citation omitted). Cause in fact requires a showing that the defendant's negligence was a "substantial factor" in bringing about plaintiff's injury. Id. Foreseeability is a "policy concern" that limits a defendant's liability to only those harms with a reasonably close connection to its breach. Bower, 215 P.3d at 724.

Plaintiff conclusorily argues that Fidelity and Flood negligently breached the duties memorialized in the escrow instructions and "proximately caused resulting injury to the investors in the Fund." (#209 at 15). As discussed previously, the duties of Defendants were contained entirely in the written instructions. There is no evidence that Fidelity and Flood failed to follow these instructions. Even if Defendants had breached a duty, any injury to the Fund did not have a reasonably close connection to Defendants' failure to record the Fund's DOT. Plaintiff himself did not know that the Property would appreciate in value or he would not have abandoned it by permitting the beneficiaries of the First DOT to foreclose on the Property. Defendants' liability for failure to record the Fund's DOT cannot be said to be reasonably close to the harm when Plaintiff himself determined that there was no equity and abandoned the Property.[6] Finally, Defendants had no duties to the investors of the Fund and cannot be held liable for their injuries. Accordingly, Plaintiff's negligence and professional negligence claims fail.

D. Negligent Misrepresentation

In order to prevail on the claim for negligent misrepresentation, Plaintiff must prove by a preponderance of the evidence that: (1) Defendants, in the course of an action in which they had a pecuniary interest, failed to exercise reasonable care or competence in obtaining or communicating

---

[6] Defendant Flood argues that the economic loss doctrine bars Plaintiff's recovery for negligence and professional negligence. Plaintiff has not addressed Defendant Flood's argument. See Local Rule 7-2. Nevada broadly applies the economic loss doctrine to prevent recovery in tort for purely economic damages, particularly in a business context. Terracon Consultants Western, Inc. v. Mandalay Resort Group, 206 P.3d 81, 83 (Nev. 2009) (design professionals not liable for economic losses arising from negligent design claim). However, the Nevada Supreme Court acknowledges exceptions for some types of professional negligence and has not specifically ruled that the doctrine protects escrow agents. Since an alternative basis for granting summary judgment exists, the Court declines to predict how the Nevada Supreme Court would rule on the application of the economic loss doctrine to escrow agents.

information to Plaintiff; (2) Plaintiff justifiably relied on this information; and (3) Plaintiff suffered damages as a result. Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nevada, 94 Nev. 131, 575 P.2d 938 (1978).

Plaintiff asserts that Flood and Fidelity negligently failed to communicate information concerning the improper disbursements to Farris and Farris-operated entities and failed to communicate the fact that the Fund's DOT remained unrecorded. Plaintiff claims that "the investors suffered damages as a result of Flood's and Fidelity's omissions in the loss of their investments." As stated previously, Defendants complied with their duty to follow the escrow instructions and had no further duties because there was no perceived fraud. Mark Props, 34 P.3d at 590. Plaintiff provides no evidence that Defendants knew the disbursements were improper or that their actions were unreasonable. Farris and the Farris-operated entities were the source of the disbursement instructions. The parties to the escrow transaction cannot show justifiable reliance because they were aware that escrow had not closed since the Novak Deed of Trust was recorded as the second lien – the position the conditional instructions provided for the Fund DOT. Plaintiff does not provide any case law showing that Defendants are liable to investors in the Fund. Accordingly, Plaintiff cannot recover for negligent misrepresentation.

### E. Intentional Misrepresentation

Defendants move for summary judgment on the intentional misrepresentation claim and argue that Plaintiff has stipulated to dismissal of fraud claims and has not provided evidence that defendants knowingly made false statements, that the Fund or BDCC Trust acted in reliance, or that they were damaged. Plaintiff has not responded to Defendants' argument for summary judgment on this claim. See Local Rule 7-2 (failure to provide points an authorities in opposition constitutes consent to granting the motion). Defendants' argument appear to be supported by good cause. Accordingly, summary judgment is granted on the intentional misrepresentation claim.

### F. Breach of Contract by Fidelity

#### 1. First cause of Action for Breach of Contract

1   Plaintiff does not oppose summary judgment on his first cause of action for breach of contract
2   relating to the Valadez Property. Accordingly, summary judgment is granted as to the first cause of
3   action.

### 2. Second and Third Causes of Action for Breach of Contract

To succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages. See Bernard v. Rockhill Dev. Co., 103 Nev. 132, 734 P.2d 1238, 1240 (1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.").

There is no dispute as to the validity of the contract or Plaintiff's performance. As previously explained in the analysis for the breach of fiduciary duty claim, Plaintiff cannot point to any failure by Fidelity to comply with the duties created by the escrow agreement. Plaintiff's own admissions and testimony from the Fund's agent who dealt with Fidelity show that Fidelity followed instructions. Plaintiff provides no evidence that Fidelity knew that the disbursements from the escrow directed by the Fund were improper. Plaintiff provides no evidence that the preconditions to closing were met such that Fidelity's failure to record the Fund's DOT was a breach of its duties under the contract. Finally, Plaintiff cannot show how the Fund was damaged. Accordingly, the breach of contract claims fail.

### G. Punitive Damages

Under Nevada law, punitive damages may be awarded upon clear and convincing evidence of fraud, oppression, or malice, express or implied. See NRS § 42.005(1). The Court has granted summary judgment in favor of Defendants on each of Plaintiff's claims. Accordingly, he cannot recover punitive damages against Defendants.

### III. Conclusion

Defendants followed the parties' instructions and neither party objected to Defendants' handling of the escrow. As receiver, Plaintiff "occupies no better position than that which was

occupied by the person or party for whom he acts ... and any defense good against the original party is good against the receiver." F.D.I.C. v. O'Melveny & Myers, 61 F.3d 17, 19 (9th Cir. 1995 (quoting Allen v. Ramsay, 179 Cal.App.2d 843, 854, 4 Cal.Rptr. 575 (1960)). Plaintiff has failed to show liability or damages and accordingly, **IT IS HEREBY ORDERED THAT** Defendant Rita Flood's Motion for Summary Judgment (#186) is **GRANTED.**

**IT IS FURTHER ORDERED THAT** Fidelity's Motion for Summary Judgment (#187) is **GRANTED**.

DATED this 11th day of May 2012.

_____
Kent J. Dawson
United States District Judge